------------------------------------------------------------x
In re:                                            : Case No. 20-6 1029
                                                  :
FIBERCORR MILLS, LLC                              : Chapter 11
                                                  :
    Debtor and                 : Judge Russ Kendig
    Debtor-in-Possession.      :
                                                  :
(Employer Tax I.D. No. 34-1913852)                :
------------------------------------------------------------x
In re:                                            : Case No. 20-6 1030
                                                  :
CHERRY SPRINGS OF                                 : Chapter 11
MASSILLON II, LLC                                 :
                                                  : Judge Russ Kendig
    Debtor and                 :
    Debtor-in-Possession.      :
                                                  :
(Employer Tax I.D. No. 47-3311706)                :
------------------------------------------------------------x
In re:                                            : Case No. 20-6 1031
                                                  :
SHEW INDUSTRIES, LLC                              : Chapter 11
                                                  :
    Debtor and                 : Judge Russ Kendig
    Debtor-in-Possession.      :
                                                  :
(Employer Tax I.D. No. 47-3290322)                :
------------------------------------------------------------x

**CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF
THE MOTIONS OF DEBTORS FOR ORDERS AUTHORIZING
<u>IT TO PAY CERTAIN PREPETITION CLAIMS</u>**

Now comes the above captioned debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, and hereby submits this Consolidated Memorandum of Law in support of the following motions (collectively, the "Motions") filed contemporaneously herewith:

- Motion Of Debtors For Order (a) Granting Authority To (i) Pay Prepetition Employee Wages, Salaries, And Related Items, (ii) Reimburse Prepetition Employee Business Expenses, (iii) Make Certain Payments For Which Payroll Deductions Were Made, (iv) Make Prepetition Contributions And Pay Prepetition Benefits Under Employee Benefit Plans, And (v) Pay All Taxes, Costs, And Expenses Incident Thereto Pursuant To Section 105 Of The Bankruptcy Code And (b) Authorizing And Directing Financial Institutions To Honor And Process Checks And Transfers Related To Such Relief;

- Motion of Debtors for an Order (a) Granting Authority to Pay Prepetition Trust Fund Taxes and (b) Authorizing and Directing Financial Institutions to Honor and Process Checks and Transfers Related to Such Relief; and

- Motion of Debtors for an Order Confirming the Administrative Expense Priority Status of Debtors' Undisputed Obligations to Suppliers for the Postpetition Delivery of Goods and Provision of Services and for Authority to Pay Prepetition administrative Claims Pursuant to 11 U.S.C. § 503(B)(9).

**I.    Background**

As set forth in detail in the Motions, the Debtors seek the entry of orders authorizing them to pay certain prepetition claims. Although the Debtors recognize that relief of the sort requested in the Motions should be granted only in limited circumstances, the Debtors' situation manifestly justifies the payment of these prepetition obligations.

The relief requested in the Motions is critical to the Debtors' survival in the immediate postpetition period and to their ability to reorganize successfully. The payment of prepetition employee claims, including wages, benefits, and workers' compensation premiums, will preserve employee morale and support, which is essential to the ongoing operation of the Debtors' business. Furthermore, payment of these prepetition employee claims will help ensure that the Debtors' business will benefit from the continued hard work and dedication of their employees.

If the Debtors are unable to pay these prepetition employee claims, they face the very real prospect of losing dedicated employees at a time when support from the workforce is critical to their survival.

With respect to prepetition trust fund taxes, such taxes are not assets of the Debtors' estate. Rather, as funds held in trust, they belong either to the payors or the intended payees – the relevant taxing authorities. Litigation over these funds would be costly, distracting and pointless. In addition, many taxing authorities impose personal liability on the officers and directors of collecting entities for trust fund taxes collected by those entities that are not paid to such taxing authorities. Thus, to the extent that any prepetition trust fund taxes remain unpaid, the Debtors' officers and directors may be subject to lawsuits or even criminal prosecution on account of such nonpayment during the pendency of the chapter 11 cases. Such lawsuits or proceedings obviously would constitute a significant distraction for such officers and directors at a time when they should be focused on the Debtors' efforts to stabilize their postpetition business operations and to develop and implement a successful reorganization strategy.

In short, the Debtors' relationship with employees is critical to the success of the Debtors' reorganization efforts. The Debtors' ability to maintain these relationships, as well as to remain in compliance with its trust fund tax obligations – thus promoting a "business as usual" atmosphere from the very outset of these chapter 11 cases – will be greatly enhanced by paying the prepetition claims described in the Motions. In fact, at this critical juncture, paying these prepetition claims may offer the only means to avoid a substantial, and perhaps irreparable, disruption in the operation of the Debtors' business. It is the Debtors' business judgment, therefore, that their very survival hinges upon their ability to make the payments descried in the Motions. In critical situations of this type, applicable law permits the Debtors to make such payments. Accordingly, the Court should grant the Motions in their entirety. The request to

3
176338
20-61029-rk    Doc 13    FILED 06/17/20    ENTERED 06/17/20 11:55:11    Page 3 of 10

honor or pay the claims described in the Motions, however, is wholly dependent on the Debtors obtaining postpetition financing or access to cash collateral or other funds necessary to operate their business.

## II. Discussion

### A. Courts Widely Recognize a Debtor's Authority to Make Postpetition Payments of Critical Prepetition Claims Under the "Necessity of Payment" Doctrine

It is well established that a bankruptcy court has the equitable power to authorize the payment of prepetition claims where such payments are necessary to preserve the going concern value of a debtor's business, thereby facilitating reorganization. See, e.g., Miltenberger v. Logansport, Crawfordsville and Southwestern Ry. Co., 106 U.S. 286, 311 (1882); In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981); In re Penn Central Transp. Co., 467 F.2d 100, 102 (3d Cir. 1972); Pension Benefit Guaranty Corp. v. Sharon Steel Corp. (In re Sharon Steel Corp.), 159 B.R. 730, 737 (Bankr. W.D. Pa. 1993); In re Just For Feet, Inc., 242 B.R. 821, 826 (D. Del 1999). Under this "doctrine of necessity,"[1] the immediate payment of prepetition claims may be authorized where the payments are essential to the debtor's continued operations. See, In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); In re SIS Corp., 108 B.R. 608, 609-10 (Bankr. N.D. Ohio 1989)(recognizing that payments on account of prepetition claims may be authorized by a court "premised upon overriding practical and policy reasons").

In addition, section 549(a) of the Bankruptcy Code, which governs postpetition transfers, provides that "the trustee may avoid a transfer of property of the estate . . . that occurs after the

---

[1] The "doctrine of necessity" is sometimes referred to as the "necessity of payment" doctrine or "necessity of payment" rule, and falls within a bankruptcy court's equitable powers under section 105 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (authorized payment of all prepetition wage and other employment related claims of active employees); Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C. §105(a).

176338
20-61029-rk    Doc 13    FILED 06/17/20    ENTERED 06/17/20 11:55:11    Page 4 of 10

commencement of the case . . . that is not authorized . . . by the court."[2] Thus, by necessary implication, a bankruptcy court may authorize appropriate postpetition payments to satisfy prepetition obligations. See, Dubuque Packing Co. v. Stonitsch (In re Isis Foods, Inc.), 37 B.R. 334, 336 n.3 (W.D. Mo. 1984) ("proposed transfers [to pay prepetition claims may] be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack").

There is ample precedent for the postpetition satisfaction of the specific types of prepetition claims described in the Motions. For example, as indicated by the unreported orders cited herein, bankruptcy courts in numerous chapter 11 cases in this District and elsewhere have granted debtors relief substantially similar to that sought by the Motions. See also, In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991)("This Court often permits the payment of pre-petition wages so that the debtor-in-possession may maintain an effective work force . . .."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991)(approving payments of prepetition claims where "the payment is necessary to avert a serious threat to the Chapter 11 process"); In re Structurlite Plastics Corp., 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988)(immediate payment of a prepetition claim may be authorized where it is "vital to the reorganization of a Chapter 11 debtor").

Similarly, in the first LTV Corporation reorganization, the bankruptcy court authorized the payment of certain prepetition wages, salaries and employee benefits and reimbursement of expenses, as well as certain workers' compensation obligations, aggregating in excess of $250 million. See, In re Chateaugay Corp., 80 B.R. 279, 281 (S.D.N.Y. 1987). On appeal, one

---

[2] Section 549(a) provides as follows:

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate —
(1) that occurs after the commencement of the case; and
(2) (A) that is authorized only under section 303(f) or 542(c) of [the Bankruptcy Code]; or
(B) that is not authorized under [the Bankruptcy Code] or by the court.

creditor challenged the order on the ground that the debtor should have been required to pay all similarly situated prepetition claimants. The district court, however, affirmed the bankruptcy court's order authorizing the debtor to make selective prepetition payments, finding that such payments did not violate the claim priority provisions of section 507 of the Bankruptcy Code:

> A rigid application of the priorities of § 507 would be inconsistent with the fundamental purpose of reorganization and one of the Act's grants of equity powers to bankruptcy courts, which is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.
>
> * * *
>
> In this case a restrictive interpretation of § 507 or of the powers accorded the bankruptcy court judge would similarly defeat the very end of Chapter 11 petitions.

Id. at 287. The district court thus affirmed the bankruptcy court's holding that a court may authorize the selective payment of certain prepetition claims where it would help to preserve and maximize the value of the debtor's estate. Id., see also, In re Ionosphere Clubs, Inc., 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989).

In another chapter 11 case, the bankruptcy court applied the same rationale in authorizing the debtor to pay certain prepetition employee claims for wages, health, and life insurance and workers' compensation premiums. See, In re Gulf Air, Inc., 112 B.R. 152, 153-54 (Bankr. W.D. La. 1989). The Gulf Air court found that such payments were in the best interests of creditors, the debtor, and the debtor's employees and were essential to a successful reorganization. Id., see also, In re UNR Indus., Inc., 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992)("The Necessity Doctrine may . . . be used . . . to justify post-petition payment of a wide variety of other types of pre-petition claims, as long as the payment of those claims will help 'to stabilize [the] debtor's business relationships without significantly hurting any party.' . . . [The key is] whether payment

of the claim will be in the best interests of the estate and/or the other creditors.") (citation omitted), rev'd and remanded on other grounds, 173 B.R. 149 (N.D. Ill. 1994).

  B. ***The Debtor Is Justified in Paying the Prepetition Claims Described in the Motions Because Payment Is Essential to the Debtor's Ongoing Business and to the Success of Its Reorganization Efforts***

Under the "necessity of payment" doctrine articulated in the foregoing cases, the Debtors' selective payment of certain prepetition claims to or on behalf of employees and prepetition trust fund taxing authorities as specified in the Motions is manifestly warranted. First, it cannot be overemphasized that the continued high-quality service of the Debtors' employees is essential. Employee support for the Debtors' reorganization efforts is critical to the success of those efforts given the innumerable tasks performed by employees in all aspects of the Debtors' business. Moreover, because some of the Debtors' employees maintain direct, ongoing contact with customers and suppliers, the employees' level of confidence in and support for the Debtors' reorganization efforts is likely to have a direct impact on the Debtors' operating results. Finally, to remain in a position to enable many key employees to perform their jobs effectively, the Debtors must continue their corporate policy of permitting certain employees to incur business-related expenses and thereafter seek reimbursement by submitting appropriate invoices or vouchers evidencing such out-of-pocket disbursements.[3]

Moreover, payment of these prepetition claims would not drain the Debtors' estates of cash that would otherwise be available to the Debtors' general creditors. For example, many of the Debtors' employee claims ultimately would be paid as priority claims under the Bankruptcy Code. Pursuant to section 507(a)(4) of the Bankruptcy Code, each employee may be granted a priority claim against the Debtors of up to $13,650.00 for wages, salaries, commissions, and

---

[3] Additionally, without the relief requested in the Motions, many of the employees would suffer undue hardship and serious financial difficulties, as employees rely on the timely payment of their wages, benefits, and other compensation to enable them to meet their own personal financial obligations.

7
176338
20-61029-rk   Doc 13   FILED 06/17/20   ENTERED 06/17/20 11:55:11   Page 7 of 10

similar items earned in the 180 days prior to the date that the Debtors filed their chapter 11 petitions (the "Petition Date").[4] Likewise, under section 507(a)(5) of the Bankruptcy Code, employees may ultimately be granted a priority claim of up to $13,650.00 for employee benefit plan contributions arising during the 180 days prior to the Petition Date.[5]

In certain limited instances, aggregate prepetition claims due and owing by a debtor to a particular employee may exceed the sum of $13,650.00 otherwise allowable as a priority claim under sections 507(a)(4) and (a)(5). The Debtors do not believe that they owe any employee over $13,650.00 in prepetition compensation, including vacation pay and sick pay. See Exhibit

---

[4] Specifically, section 507(a)(4) of the Bankruptcy Code provides a priority for:

> [A] allowed unsecured claims, but only to the extent of $13,650 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for -
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).

[5] Specifically, section 507(a)(5) of the Bankruptcy Code provides a priority for: allowed unsecured claims for contributions to an employee benefit plan -

> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only (continued)
>
> (B) for each such plan, to the extent of --
>
> (i) the number of employees covered by each such plan multiplied by $13,650; less
>
> (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection [regarding certain wages, salaries, or commissions], plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5)

A attached to the Motion. Notwithstanding the $13,650.00 limitation placed upon such claims, the Debtors, for the reasons set forth herein, should be permitted to pay such claims in full.

Furthermore, in view of the rehabilitative purposes of the relief requested in the Motions, the Debtors should be permitted the discretion to select whether to pay the prepetition claims of individual creditors within the groups of creditors for which relief is granted. This discretion, which routinely has been granted in other cases, will allow the Debtors to exercise their judgment, on a case-by-case basis, to determine whether payment of any particular creditor will help preserve and enhance the Debtors' ongoing business operations and going concern value.

## III.  Conclusion

If the requested relief is not granted, there is a substantial risk that the Debtors' business operations would be significantly — and perhaps irreparably — undermined. If the Motions are denied, the Debtors' business may fail — to the benefit of no party — before the Debtors have had the opportunity even to attempt a reorganization. In this precarious environment, it is especially important for the Debtors to maintain a "business as usual" atmosphere to ensure the smooth and uninterrupted operation of their business. It is the Debtors' business judgment, therefore, that authority to immediately pay the prepetition claims described in the Motions is

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

absolutely critical to the success of the Debtors' chapter 11 case and the Debtors' reorganization efforts. Accordingly, for the reasons described herein, and in the Motions, the Court should grant the Motions in their entirety.

> Respectfully submitted,
>
> /s/ Anthony J. DeGirolamo
> Anthony J. DeGirolamo (0059265)
> 3930 Fulton Dr., Ste. 100B
> Canton, Ohio  44718
> Telephone:  (330) 305-9700
> Facsimile:  (330) 305-9713
> E-mail:  ajdlaw@sbcglobal.net
>
> PROPOSED COUNSEL FOR
> THE DEBTORS AND
> DEBTORS IN POSSESSION